

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOCELYNE GERALDYNE CASTILLO VILLA, | Case No. 5:26-cv-03833-AJR |
| Petitioner, | **MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |
| v. | |
| FERETI SEMAIA, ET AL., | |
| Respondents. | |

**I.**

**INTRODUCTION**

On July 10, 2026, Petitioner Jocelyne Geraldyne Castillo Villa (A# 207-024-267) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus (the "Petition"), challenging her detention in immigration custody. (Dkt. 1 at 2-3.) On July 17, 2026, Respondents Fereti Semaia, Warden of the Adelanto Detention Facility, Andre Quinones, Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement ("ICE"), David J. Venturella, Acting Director, ICE, Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche, Acting Attorney

General (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On July 20, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 4, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody subject only to those conditions that were in place prior to her arrest on June 8, 2026 (if any).**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. (Dkt. 1 at 13.) Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. (Dkt. 8.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner has resided in the United States for over twenty years since being brought here as a child. (Dkt. 1 at 9.) Petitioner graduated from a U.S. high school and previously held status under the program known as Deferred Action for Childhood Arrivals ("DACA"). (Id.) Petitioner has no criminal convictions or any other reason to trigger mandatory detention. (Id.)

On June 8, 2026, Petitioner was arrested in Los Angeles, California and transferred to the Adelanto Detention Facility, where she is now detained. (Id.) Immigration authorities placed Petitioner in removal proceedings before the Adelanto Immigration Court pursuant to 8 U.S.C. § 1229a. (Id.) ICE has charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who is present without admission in the United States. (Id.) Following Petitioner's

arrest and transfer to the Adelanto Detention Facility, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.  (Id.)

On July 7, 2026, Petitioner had a bond redetermination hearing before an Immigration Judge.  (Id.)  The Immigration Judge denied Petitioner's request for bond based on a lack of jurisdiction as follows:

> Court finds no jurisdiction to proceed in adjudicating bond reconsideration request under INA § 236(a).

> On March 31, 2026, United States Court of Appeals for the Ninth Circuit issued judicial stay of the U.S. District Court's order vacating Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025).  Accordingly, Court has no jurisdiction to consider bond redetermination, as Respondent surreptitiously entered the United States and as such falls within the ambit of INA § 235(b)(2)(A), which divests jurisdiction from Immigration Judges to hear bond requests or grant bond to aliens who are present in the United States without admission.

(Dkt. 1 at 9; Dkt. 1-1 at 1.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner contends that her detention without a substantive redetermination hearing violates her right to due process under the Fifth Amendment.  (Dkt. 1 at 10.)  Petitioner further contends that the application of 8 U.S.C. § 1225(b)(2) to her unlawfully mandates her continued detention without a bond hearing and violates 8 U.S.C. § 1226(a).  (Id. at 10-11.)  Finally, Petitioner contends detention is arbitrary and capricious in violation of the Immigration and Nationality Act ("INA"), the Fifth Amendment, and the Administrative Procedure Act ("APA").  (Id. at 11.)  Petitioner seeks her immediate release from custody and an award of reasonable

attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will

be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights."  Regino, 133 F.4th at 959-60.  Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).  By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests."  Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted).  To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted).  With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed."  Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

It is undisputed that Petitioner has resided in the United States for over twenty since being brought here as a child.  (Dkt. 1 at 9.)  Iti s further undisputed that Petitioner graduated from a U.S. high school and previously held status under the DACA program.  (Id.)  Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on the length of time she lived in the United States and the ties she built to the community over the past twenty years.  See, e.g., Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.").  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Therefore, the Court concludes that Petitioner's arrest on June 8, 2026, without a pre-deprivation hearing violated Petitioner's procedural due process rights.  See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been

6

afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

The Court also concludes that Respondents' failure to provide a meaningful post-deprivation bond hearing further violated Petitioner's due process rights. Indeed, it is undisputed that Petitioner had a bond redetermination hearing before an Immigration Judge on July 7, 2026. (Dkt. 1-1 at 1.) However, the Immigration Judge found a lack of jurisdiction to consider Petitioner for bond based on the Ninth Circuit's stay of the February 18, 2026 Order in Maldonado Bautista v. Santacruz, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026), that vacated Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). (Id.) While the Immigration Judge was correct that the Ninth Circuit had stayed the Maldonado Bautista order vacating Matter of Yajure Hurtado, the Ninth Circuit only stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal. Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1-2 (9th Cir. Mar. 6, 2026); see also Maldonado Bautista v. Executive Office for Immigration Review, No. 26-1044, Dkt. 17.1 at 4 (9th Cir. March 31, 2026). Therefore, the December 18, 2025 declaratory judgment remained effective and enforceable within the Central District of California. According to the December 18, 2025 declaratory judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). Accordingly, the Immigration Judge had jurisdiction to consider Petitioner for bond and was legally required by the declaratory judgment in Maldonado Bautista to do so. See 28 U.S.C. § 2201 (providing that a declaratory judgment "shall have the force and effect of a final judgment or decree).

Moreover, the Ninth Circuit has now resolved the appeals related to Maldonado Bautista and concluded that "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Accordingly, it is absolutely clear that the Immigration Judge unlawfully applied 8 U.S.C. § 1225(b)(2)(A) instead of 8 U.S.C. § 1226 to deny Petitioner bond based on a lack of jurisdiction and therefore violated both the INA and Petitioner's due process rights.

Given these violations of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return h[er] to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

The fact that Petitioner could receive another post-deprivation bond hearing does not remedy the violation of Petitioner's procedural due process rights, particularly because the Immigration Judge already erroneously concluded that the court lacked jurisdiction to conduct a custody redetermination. (Dkt. 1-1 at 1); see, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)

("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)).  Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner's due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1]  See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub

---

[1] As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor.  Under the second Matthews factor, the risk of erroneous deprivation is very high because an Immigration Judges has already wrongly determined that Petitioner is not entitled to a bond hearing.  (Dkt. 1-1 at 1.)  Finally, under the third Matthews factor, the Government's interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided.  See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and her due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public

10

interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure her release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case.  See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA.  (Dkt. 1 at 11.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows.  The

---

[2] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge."  Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Court declares that Petitioner is currently detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  Respondents shall immediately release Petitioner Jocelyne Geraldyne Castillo Villa (A# 207-024-267) ("Petitioner"), from custody subject only to those conditions that were in place prior to her arrest on June 8, 2026 (if any).  Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing.  The pre-deprivation bond hearing shall occur before an Immigration Judge at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard.  Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED:   August 3, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE